**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MOLLY BECKER, | ) | |
| | ) | No. 4-19-CV-00790-RLW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WALMART, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff Molly Becker ("Plaintiff") alleges the following facts and claims upon personal knowledge, investigation of counsel, and information and belief.

**NATURE OF THE CASE**

1.      The Textile Fiber Products Identification Act, 15 USC §§ 70-70k (West) (hereinafter "Textile Act"), and the regulations implementing the Textile Act, 16 CFR Part 303, prohibit the introduction or manufacture for introduction into commerce or for sale and advertising, and the sale, offering for sale, advertising and shipment in commerce of "any textile fiber product which is misbranded or falsely or deceptively advertised within the meaning of this subchapter or the rules and regulations promulgated thereunder . . . ."  In addition, the Textile Act expressly declares that any violation "is unlawful, and shall be an unfair method of competition and an unfair and deceptive act or practice in commerce under the Federal Trade Commission Act [15 U.S.C. 41 et seq.]."  A misbranded textile is any fiber product that "is falsely or deceptively stamped, tagged, labeled, invoiced, advertised, or otherwise identified as to the name or amount of constituent fibers contained therein."  15 USC § 70b(a).

1

2.      In direct contravention of the Textile Act and Missouri State law, Defendant introduced into commerce, advertised, offered for sale, and sold Better Homes and Gardens brand sheets, which it uniformly labeled, represented and advertised as containing "100% Egyptian Cotton" (the "Products").

3.      Contrary to the uniform labeling and representations, however, the Products do not contain 100% Egyptian Cotton and in fact contain little or no Egyptian Cotton.  Plaintiff has confirmed the absence of Egyptian Cotton in the Products by independent laboratory testing.

4.      Accordingly, and as alleged herein, Defendant has engaged in misleading, deceptive and unlawful conduct in violation of the Textile Act and its accompanying Rules and Regulations and the Federal Trade Commission Act (hereinafter "FTC Act").  This conduct in turn violates the Missouri Merchandising Practices Act (the "MMPA") and has caused Defendant to be unjustly enriched.

5.      Based on Defendant's unlawful conduct, Plaintiff seeks damages, disgorgement of Defendant's unjust enrichment, injunctive and equitable relief, and all other remedies this Court deems appropriate.

## **PARTIES**

6.      Plaintiff Molly Becker is a resident of Rolla, Missouri.  On at least one occasion during the Class Period, Plaintiff purchased a Better Homes and Gardens 400 Thread Count Egyptian Cotton Sheet Set, which was labeled and advertised as containing 100% Egyptian Cotton, for personal, family, or household purposes, from a Walmart Store located in Rolla, MO.  The purchase price of the Product was approximately $54.88.

7.      Defendants Walmart Inc. is a corporation headquartered in Wilmington, Delaware with its principal business office in Bentonville, Arkansas.  Defendant and its agents manufacture,

market, distribute, label, promote, advertise and sell the Products.  The unfair, unlawful, deceptive, and misleading conduct described herein was engaged in, approved and/or authorized by Defendant and its agents.

## JURISDICTION AND VENUE

8.     Pursuant to information submitted by Defendant in its Notice of Removal (Dkt. No. 1), this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the parties are citizens of different states. Furthermore, jurisdiction is conferred upon this Court pursuant to the Class Action Fairness Act in that damages exceed more than $5,000,000 in the aggregate, and the parties are citizens of different states. 28 U.S.C. § 1332(d)(2).

9.     This Court has personal jurisdiction over Defendant as Defendant has had more than sufficient minimum contact with the State of Missouri and has availed itself of the privilege of conducting business in this state and because the claims of Plaintiff and the Classes arise out of Defendants' contact with the forum.  Additionally, and as explained below, Defendant has committed affirmative tortious acts within the State of Missouri that give rise to civil liability, including distributing and selling the misbranded Products throughout the State of Missouri.

10.    Plaintiff is a citizen of the State of Missouri and resident of this judicial district.

11.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic activities within the State of Missouri and in this forum. Specifically, as provided by 28 U.S.C. §1391(c), Defendant is a company that is deemed to reside in this District. Moreover, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

12.     Service has been properly effected, and this Court has *in-personam* jurisdiction over the Defendant under the applicable federal statutes and state long-arm statutes.

## ALLEGATIONS OF FACT

### *The Textile Act*

13.     The Textile Act prohibits the introduction or manufacture for introduction into commerce or for sale and advertising, and the sale, offering for sale, advertising and shipment in commerce of "any textile fiber product which is misbranded or falsely or deceptively advertised within the meaning of this subchapter or the rules and regulations promulgated thereunder . . . ." 15 USC §§ 70-70k (West).

14.     In addition, the Textile Act expressly declares that any violation of the Act "is unlawful, and shall be an unfair method of competition and an unfair and deceptive act or practice in commerce under the Federal Trade Commission Act [15 U.S.C. 41 et seq.]."

15.     Under the Textile Act, the term "textile fiber product" includes "any household textile article made in whole or in part of yarn or fabric." *Id*. at § 70(h)(3). Cotton linen is a "textile fiber product" within the meaning of the Textile Act.

16.     A misbranded textile is any fiber product that "is falsely or deceptively stamped, tagged, labeled, invoiced, advertised, or otherwise identified as to the name or amount of constituent fibers contained therein." *Id*. at § 70(a).

17.     The Federal Trade Commission ("FTC") has promulgated rules governing the labeling of textile products.  Under 16 C.F.R. § 303.16(a), a label must disclose the "generic name" of the constituent fibers of a product (such as "cotton").  Under 16 C.F.R. § 303.16(d), additional descriptive terms (such as "Egyptian cotton") may be included on the label, but only if they are "non-deceptive" and "are properly and truthfully descriptive" of the fiber used in the product.

4

Under 16 C.F.R. § 303.27, "the word 'All' or the term '100%' may be used in labeling, together with the correct generic name of the fiber and any qualifying phrase [i.e., 100% Egyptian cotton]," only if the product "is comprised wholly" of that fiber.

### ***Defendant Falsely Marketed, Labeled and Sold the Products as "100% Egyptian Cotton"***

18.    Defendant manufactures, markets, promotes, labels, advertises, and sells branded merchandise in its stores, including the Products at issue.  Among other things, the sewn-in label on the Products states that they are "Distributed by Walmart, Inc."

19.    Defendant uniformly advertises, labels and represents the Products as "100% Egyptian Cotton" on both the Product packaging and the tag that is sewn into the Products, as depicted below.





20.     Contrary to Defendant's material representation that the Products contain 100% Egyptian Cotton, the Products contain little or no Egyptian Cotton.  Specifically, independent testing of the Product for fiber length and distribution reveals that the average fiber length is 0.853, which is far less than the standard for Egyptian ELS or GIZA cotton.  In addition, 0% of the fibers tested were 1.440 inches or greater in length.  Yet, in order to qualify as Egyptian ELS the fiber length must be 1.5 inches to 2.5 inches, and in order to qualify as GIZA 87 93, the fiber length must be 1.4 inches to 1.45 inches.  Accordingly, Defendant's representation that the Products contain 100% Egyptian Cotton is patently false.

21.     The testing results are also consistent with the guidelines provided by ASTM International, one of the largest voluntary standards developing organizations in the world, which provides a forum for the development and publication of international voluntary consensus standards for materials, products, systems and services.  ASTM International's members develop

technical documents that are the basis of manufacturing, management, procurement, codes and regulations for dozens of industry sectors, including the textile industry.  ASTM International's Standard Guide for Textile Fibers, which was reapproved in 2014, states that the commercial and botanical name "Egyptian" Cotton refers to an extra-long staple barbadenses (Gossypium barbadense), which has a staple length of approximately one and one-eighths inches (1 1/8 in.) to one and five-eighths inches (1 5/8 in.).  According to the testing results, however, less than 7% of the fibers in the Product samples were 1.200 inches or greater: a far cry from the 100% claimed. Accordingly, under the ASTM guidelines, Defendant has made a uniform, material misrepresentation and omission in the advertising and sale of the Products.

### *Plaintiff Paid a Premium For the Products And Was Misled*

22.     Egyptian Cotton is considered to be some of the highest quality cotton in the world.

23.     Fabrics, including bedding, that are labeled as containing 100% Egyptian Cotton command a price premium because they are considered to be comprised of the highest quality cotton on the market.

24.     The type of fabric that is used in bedding products is a driving factor in price. Accordingly, Defendant charged a premium for the Products based on the 100% Egyptian cotton labeling and representations.

25.     The Product packaging and labeling was misleading to Plaintiff.

26.     Reasonable consumers, such as Plaintiff, attached importance to the representation that the Products contain 100% Egyptian Cotton as the basis for her purchasing decision.  Plaintiff was misled because, as described herein, the Products do not in fact contain 100% Egyptian Cotton.

27.     Plaintiff suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.

### *Defendant's Conduct Violates Federal and State Law*

28.     Defendant's deceptive and misleading conduct, as described herein, violates the Textile Act because Defendant: (1) fails to affix an accurate and truthful fiber content tag to the Products; (2) fails to accurately and truthfully disclose the fiber content on the label of the Products; and (3) fails to maintain required records substantiating the fiber content of the Products at each stage of the manufacturing process.  In addition, because the true and accurate fiber content is different than that disclosed on the fiber content tag and the label, the Products are misbranded as a matter of law, and manufacturing, importing, offering for sale, or selling the Products is "an unfair and deceptive act or practice" and an "unfair method of competition" as a matter of law. *See* 15 USC §§ 70a-70b.  Defendant's deceptive acts and practices are also unlawful under the FTC Act.  *Id*. at § 45(a)(1).  In addition, Defendant's failure to maintain records sufficient to substantiate the claims on its fiber content tags and labels, constitutes an independent "unfair and deceptive act or practice" and an "unfair method of competition" as a matter of law. *Id.* at § 70d. *See also* 16 CFR § 303.39 and § 303.2(d).  As described in detail herein, these violations contravene the MMPA, which prohibits deceptive, fraudulent, misleading and unfair conduct in connection with the sale or advertisement of any merchandise in trade or commerce. § 407.020.43, RSMo.

29.     Specifically, under the Textile Act and its accompanying Rules and Regulations, sellers have a legal duty to affix an accurate fiber content identification tag to a product, accurately disclose the fiber content to the same extent on the label of the product, and accurately advertise

the fiber content of the product.  *See* 15 U.S.C. §70b.  If the actual fiber content is different than the labeled amount, the product is misbranded as a matter of law, and importing or retailing such a product is "an unfair and deceptive act or practice" and an "unfair method of competition."  *Id.* at §70a.

30.     In furtherance of this regulatory scheme, manufacturers of textile products, like Defendant, must maintain records sufficient to substantiate the claims on its fiber content tags and labels.  *See id.* at §70d.  Any person failing to maintain such records has committed a *per se* violation of an unfair method of competition, and an unfair or deceptive act or practice, under the Textile Act.  *Id.*; *see* 16 CFR § 303.39; *see also id.* § 303.2(d).

31.     Importantly, these records must document the fiber used through the entire manufacturing chain, from acquisition of the raw cotton through production of the finished article, and a "guarantee" of fiber content from a supplier is expressly made insufficient for Defendant by the applicable regulations.  *See* 16 CFR §303.39.

32.     Defendant has not and does not maintain the proper documentation to support its 100% Egyptian Cotton claims, nor could it, since the Products do not contain 100% Egyptian Cotton.

33.     Defendant knew, or should have known, that the 100% Egyptian Cotton claim is materially false, deceptive and misleading.

34.     Defendant's misrepresentations and omissions are uniform because the Products were uniformly packaged and labeled as containing 100% Egyptian Cotton.

## **CLASS ALLEGATIONS**

35.     Plaintiff repeats and re-alleges the allegations of all other paragraphs in this complaint as if fully set forth herein.

36.     Plaintiff brings the below causes of action individually and on behalf of others who are similarly situated pursuant to Federal Rule of Civil Procedure 23(a), (b).

37.     The putative class for Counts I, II and III is: all persons who, within the five years preceding the filing of this Complaint, purchased for personal, family or household purposes Better Homes & Gardens sheets, which were represented to contain 100% Egyptian Cotton and were not made or manufactured by Welspun Group ("Missouri Consumer Class").

38.     The putative class for Count IV is: all persons in the United States who, within the relevant statute-of-limitations period, purchased for personal, family or household purposes, Better Homes & Gardens sheets, which were represented to contain 100% Egyptian Cotton and were not made or manufactured by Welspun Group ("Nationwide Class").

39.     Excluded from the Classes are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendant has a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

40.     _Numerosity – Rule 23(a)(1)._ Upon information and belief, the Classes consist of thousands of purchasers dispersed throughout the United States.  Accordingly, it would be impracticable to join all members of the Classes before the Court.

41.     _Predominance and Commonality – Rule 23(a)(2); (b)(3)._  There are numerous and substantial questions of law or fact common to all members of the Classes that predominate over any individual issues.  Included within the common questions of law or fact are:

a.     Whether Defendant made false and/or misleading representations or statements in the labeling of the Products;

b.     Whether Defendant made omissions in the labeling of the Products;

c.     Whether Defendant's representations and/or omissions were likely to be misleading to a reasonable consumer;

d.     Whether Defendant's actions as alleged herein constitute an unlawful practice under the MMPA;

e.     Whether Defendant's actions as alleged herein constitute an unfair practice under the MMPA;

f.     Whether Defendant's actions as alleged herein were unethical, oppressive, or unscrupulous;

g.     Whether Defendant's actions as alleged herein constituted concealment or omission of any material fact;

h.     Whether, and to what extent, injunctive relief should be granted to prevent such conduct in the future;

i.     Whether Defendant has been unjustly enriched by the sale of the Products to the Plaintiff and members of the Classes;

j.     Whether Plaintiff and members of the Classes have sustained damages as a result of Defendant's unlawful conduct; and

k.     The proper measure of damages sustained by Plaintiff and members of the Classes.

42.     _Typicality – Rule 23(a)(3)_. The claims of the Plaintiff are typical of the claims of members of the Classes, in that she shares the above-referenced facts and legal claims or questions

with members of the Classes, there is a sufficient relationship between the damage to Plaintiff and Defendant's conduct affecting members of the Classes, and Plaintiff has no interests adverse to the interests of other members of the Classes.

43. *Adequacy of Representation – Rule 23(a)(4).* Plaintiff will fairly and adequately protect the interests of members of the Classes and has retained counsel experienced and competent in the prosecution of complex class actions including complex questions that arise in consumer protection litigation.

44. *Superiority – Rule 23(b)(3).* A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Classes is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

   a. The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Classes;

   b. Absent a Class, the members of the Classes will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

   c. Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

d.      When the liability of Defendant has been adjudicated, claims of all members of the Classes can be administered efficiently and/or determined uniformly by the Court; and

e.      This action presents no difficulty that would impede its management by the Court as a class action which is the best available means by which Plaintiff and members of the Classes can seek redress for the harm caused to them by Defendant.

45.     Because Plaintiff seeks relief for all members of the Classes, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant.

46.     Further, bringing individual claims would overburden the Courts and be an inefficient method of resolving the dispute, which is the center of this litigation.  Adjudications with respect to individual members of the Classes would, as a practical matter, be dispositive of the interest of other members of the Classes who are not parties to the adjudication and may impair or impede their ability to protect their interests.  As a consequence, class treatment is a superior method for adjudication of the issues in this case.

## FIRST CLAIM FOR RELIEF
### Violation of Missouri's Merchandising Practices Act
### (Misrepresentations and False Statements)

47.     Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

48.     The MMPA "is designed to regulate the marketplace to the advantage of those traditionally thought to have unequal bargaining power as well as those who may fall victim to

unfair practices." *Huch v. Charter Commc'ns Inc.*, 290 S.W. 3d 721, 725 (Mo. banc. 2009).  The MMPA provides that it is unlawful to "act, use or employ . . . deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ."  § 407.020.1, RSMo.

49.     The MMPA applies to acts committed "before, during or after the sale, advertisement or solicitation" of merchandise, and provides a cause of action for "any person who purchases or leases merchandise primarily for personal, family or household purposes." Section 407.020 is intended to supplement the definitions of common law fraud to "preserve fundamental honesty, fair play and right dealings in public transactions."

50.     Defendant's conduct as described above constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce in that Defendant makes material false representations and omissions that the Products contain 100% Egyptian cotton.  Among other things, Plaintiff and Class members were misled because Defendant represented and they believed that they were purchasing Products containing 100% Egyptian cotton.

51.     Defendant's misrepresentations and omissions as set forth in this Complaint are material in that they relate to matters that are important to Plaintiff and Class members.

52.     In violation of the MMPA, Defendant employed fraud, deception, false promise, misrepresentation and/or the knowing concealment, suppression or omission of material facts in its manufacture, sale and advertisement of the Products.

53.     Plaintiff and members of the Missouri Consumer Class purchased the Products for personal, family, or household purposes.

54.     Plaintiff and the Missouri Consumer Class members suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.

55.     In addition, Defendant's conduct has caused Plaintiff and the Missouri Consumer Class members irreparable injury.  As described herein, Defendant has engaged in unlawful and misleading conduct on a routine and consistent basis, harming Missouri consumers in a uniform manner.  Unless restrained and enjoined, Defendant will continue such conduct.  As authorized under § 407.025.2, RSMo., Plaintiff requests injunctive relief, and such other equitable relief as the Court deems just and proper.

56.     Furthermore, it is possible that Plaintiff and Class members would purchase the Products in the future if they were accurately represented, and that they will be deceived in the future if the Products are misbranded.

57.     Plaintiff and Class Members are also entitled to recover attorney fees as authorized by § 407.025.

58.     This private civil action by Plaintiff to enforce § 407.010 *et. seq.* is authorized by § 407.025.

59.     Class actions are authorized by the MMPA where an unlawful practice "has caused similar injury to numerous other persons." § 407.025.2.

**SECOND CLAIM FOR RELIEF**
**Violation of Missouri's Merchandising Practices Act**
**(Unfair Practice, 15 CSR 60-8.020)**

60.     Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

61.     The MMPA prohibits as an unlawful practice the act, use or employment of any "unfair practice" in connection with the sale or advertisement of any merchandise in trade or commerce. § 407.020.1, RSMo.

62.     "Unfair practice" is defined as "any practice which –

(A) Either—

        1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

        2. Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

15 CSR 60-8.020.

63.     Defendant's actions, as alleged herein, were and are unethical, oppressive, and unscrupulous.

64.     In addition, Defendant's conduct violates the statutes and laws described herein, including the Textile Act and the FTC Act and offends public policy as it has been established by statute and the FTC.

65.     Plaintiff and the Missouri Consumer Class purchased the Products for personal, family, or household purposes.

66.     Plaintiff and the Missouri Consumer Class suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.

16

67.     In addition, Defendant's conduct has caused plaintiff and the Missouri Consumer Class members irreparable injury.  As described herein, Defendant has engaged in unlawful and misleading conduct on a routine and consistent basis, harming Missouri consumers in a uniform manner.  Unless restrained and enjoined, Defendant will continue such conduct.   As authorized under § 407.025.2, RSMo., Plaintiff requests injunctive relief, and such other equitable relief as the Court deems just and proper.

68.     Furthermore, it is possible that Plaintiff and Class members would purchase the Products in the future if they were accurately represented, and that they will be deceived in the future if the Products are misbranded.

69.     Plaintiff and Class Members are also entitled to recover attorney fees as authorized by § 407.025.

70.     This private civil action by plaintiffs to enforce § 407.010 *et. seq.* is authorized by § 407.025.

71.     Class actions are authorized by the MMPA where an unlawful practice "has caused similar injury to numerous other persons." § 407.025.2

### THIRD CLAIM FOR RELIEF
### Violation of Missouri's Merchandising Practices Act
### (Concealment or Omission of any Material Fact, 15 CSR 60-9.110)

72.     Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

73.     The MMPA prohibits as an unlawful practice the act, use or employment of the "concealment, suppression or omission of any material fact" in connection with the sale or advertisement of any merchandise in trade or commerce. §407.020.1, RSMo.

74.     A "material fact" is defined as "any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a

person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would be likely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner." 15 CSR 60- 9.010(1)(C).

75.     "Concealment of a material fact" is defined as "any method, act, use or practice which operates to hide or keep material facts from consumers." 15 CSR 60-9.110(1).

76.     "Omission of a material fact" is defined as "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her."  15 CSR 60-9.110(3).

77.     Defendant's actions as alleged herein constituted the concealment and omission of material facts.  Among other things, and as described herein, Defendant concealed and omitted the material fact that the Products actually contain little or no Egyptian Cotton, despite the fact that they are labeled and advertised as containing 100% Egyptian Cotton.

78.     Plaintiff and the Missouri Consumer Class members purchased the Products for personal, family, or household purposes.

79.     Plaintiff and the Missouri Consumer Class members suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.

80.     In addition, Defendant's conduct has caused plaintiff and the Missouri Consumer Class members irreparable injury.  As described herein, Defendant has engaged in unlawful and misleading conduct on a routine and consistent basis, harming Missouri consumers in a uniform manner.  Unless restrained and enjoined, Defendant will continue such conduct.  As authorized under § 407.025.2, RSMo., Plaintiff requests injunctive relief, and such other equitable relief as the Court deems just and proper.

81.     Furthermore, it is possible that Plaintiff and Class members would purchase the Products in the future if they were accurately represented, and that they will be deceived in the future if the Products are misbranded.

82.     Plaintiff and Class Members are also entitled to recover attorney fees as authorized by § 407.025.

83.     This private civil action by plaintiffs to enforce § 407.010 *et. seq.* is authorized by § 407.025.

84.     Class actions are authorized by the MMPA where an unlawful practice "has caused similar injury to numerous other persons." § 407.025.2.

### FOURTH CLAIM FOR RELIEF
**Unjust Enrichment**

85.     Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

86.     By purchasing the Products, Plaintiff and Class Members conferred a benefit on Defendant in the form of the purchase price of the Products.   This benefit was non-gratuitous and constitutes an unjust taking.

87.     Defendant had knowledge of such benefits.

88.     Defendant appreciated the benefit because, were Plaintiff and Class Members not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

89.     Defendant's acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent and misleading representations and omissions and Defendant's unlawful conduct.

90.     As a result of the foregoing, Plaintiff and Class Members have suffered damages, as set forth herein.

19

91.     Equity cannot in good conscience permit Defendant to be economically enriched for such actions at the Plaintiff's and Class Members' expense, and therefore restitution and/or disgorgement of such economic enrichment is required.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, seeks judgment against Defendant, as follows:

a.      Certifying the Classes, as requested herein, certifying Plaintiff as the named representative, and appointing Plaintiff's counsel as counsel for the Classes;

b.      Ordering that Defendant must pay for notice to be sent to all Class Members;

c.      For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

d.      For an order finding in favor of Plaintiff and Class Members on all counts asserted herein;

e.      For an order awarding all compensatory damages, in an amount to be determined by the Court and/or jury.

f.      For an order awarding injunctive and/or declaratory relief;

g.      For an order requiring Defendant to engage in accurate, corrective advertising;

h.      For prejudgment interest on all amounts awarded;

i.      For interest on the amount of any and all economic losses, at the prevailing legal rate;

j.      For an order of restitution and all other forms of equitable monetary relief;

k.      For an order awarding Plaintiff her reasonable attorneys' fees, expenses and costs of suit; and

l.      For all such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury on all issues triable to a jury under law or equity.

Dated: May __10__, 2019                        **STEELMAN & GAUNT**


 /s/ Stephen F. Gaunt
Stephen F. Gaunt, #33183MO
sgaunt@steelmanandgaunt.com
David L. Steelman, #27334MO
dsteelman@steelmanandgaunt.com
901 Pine Street, Suite 110
Rolla, MO  65401
Tel: (573) 341-8336
Fax: (573) 341-8548

**KAMBERLAW, LLP**
Naomi B. Spector (*pro hac vice forthcoming*)
nspector@kamberlaw.com
9404 Genesee Avenue, Suite 340
La Jolla, CA 92037
Tel: (310) 400-1053
Fax: (858) 800-4277

*Attorneys for Plaintiff*